# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JACQUELINE BILLINGSLEY,
o/b/o J.B., a minor,[1]

     *Plaintiff,*

*v.*                        CASE NO. 13-CV-10870

COMMISSIONER OF          DISTRICT JUDGE GEORGE CARAM STEEH
SOCIAL SECURITY,         MAGISTRATE JUDGE CHARLES E. BINDER

     *Defendant.*
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[2]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff's minor child, J.B., is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1]The Complaint refers to the minor plaintiff by his full name, and therefore so does the Court's docket. However, the minor should have been referred to as "J.B.," since Rule 5.2(a)(3) of the Federal Rules of Civil Procedure prohibits the use of a minor's name and requires that only a minor's initials be used.

[2]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II.   REPORT

### A.   Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for supplemental security income ("SSI") benefits for Plaintiff's minor child. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 12.)

Plaintiff's son, J.B., was 17 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 6 at 40.) Plaintiff filed the instant claim on November 9, 2009, alleging that J.B.'s disability began on March 8, 1994, his date of birth. (Tr. at 130.) The claim was denied at the initial administrative stages. (Tr. at 70.) In denying the claims, the Defendant Commissioner considered borderline intellectual functioning, obesity, and other hyperalimentation as possible bases of disability. (*Id.*) On June 22, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") James N. Gramenos, who considered the application for benefits *de novo*. (Tr. at 11-35, 36-69.) In a decision dated September 14, 2011, the ALJ found that J.B. was not disabled. (Tr. at 32.) Plaintiff requested a review of this decision on November 8, 2011. (Tr. at 7-10.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on December 28, 2012, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On March 4, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B.     Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with

observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

4

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. § 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. § 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

A child will be considered disabled if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations . . . ." 42 U.S.C. § 1382c(a)(3)(C)(I). To determine whether a child's impairment results in marked and severe limitations, Social Security Administration ("SSA") regulations[3] prescribe a three-step sequential evaluation process:

1.   If a child is doing substantial gainful activity, the child is not disabled and the claim will not be reviewed further.

2.   If a child is not doing substantial gainful activity, the child's physical or mental impairments will be considered to see if an impairment or combination of impairments is severe. If the child's impairments are not severe, the child is not disabled and the claim will not be reviewed further.

3.   If the child's impairments are severe, the child's impairment(s) will be reviewed to determine if they meet, medically equal or functionally equal the listings. If the child has such an impairment and it meets the duration requirement, the child will be considered disabled. If the child does not have such impairment(s), or if the duration requirement is not met, the child is not disabled.

20 C.F.R. § 416.924(a). In the third step – namely, whether a child's impairment functionally equals the listings – the Commissioner assesses the functional limitations caused by the child's impairment(s). 20 C.F.R. § 416.926a(a). The Social Security regulations list specific impairments relevant to step three, some of which apply only to children. *Id.* § 416.924(d). A claimant bears the burden of proving that his or her impairment satisfies, or "meets," one of the listed impairments. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir.1995); *see also Hall ex rel. Lee v. Apfel*, 122 F. Supp. 2d 959, 964 (N.D. Ill. 2000) (child's claim). Once a claimant makes such a showing, an irrebuttable presumption of disability arises and benefits must be awarded. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)).

---

[3]For a history of these regulations, see *Molina v. Barnhart,* No. 00-CIV-9522(DC), 2002 WL 377529 (S.D.N.Y. March 11, 2002).

To "meet" a listed impairment, a child must demonstrate both "A" and "B" criteria. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. "A" criteria are medical findings and "B" criteria "describe impairment-related functional limitations." *Id*. An impairment that shows some but not all of the criteria, no matter how severely, does not qualify. *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). If a child's impairments do not meet a listed impairment, they may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment. 20 C.F.R. § 416.926a(a). A child's impairments "equal" a listed impairment when the child demonstrates a "'marked' limitation[ ] in two domains of functioning or an 'extreme' limitation in one domain." *Id*.

Domain analysis is equivalent to analysis of the "A" and "B" criteria for listed impairments and focuses on "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The regulations include six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. *Id*. A "marked" limitation is one which "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). It "is 'more than moderate' but 'less than extreme.'" *Id.*

## D.   ALJ Findings

The ALJ applied the Commissioner's disability analysis described above and found at step one that J.B. was born on March 8, 1994, and therefore was an adolescent on November 9, 2009, the date the application was filed and is currently an adolescent, and that he had not engaged in substantial gainful activity since November 9, 2009, the application date. (Tr. at 18.) At step two, the ALJ found that J.B.'s learning disorder, depressive disorder (NOS), borderline IQ, and obesity

were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that J.B.'s combination of impairments met or equaled one of the listings in the regulations. (Tr. at 18-32.) Therefore, the ALJ found that J.B. was not disabled. (Tr. at 32.)

### E.    Administrative Record

The evidence of record reveals that J.B. has received special education services since first grade, which he repeated. (Tr. at 42.) At the time of the hearing, J.B. had been attending therapy sessions for depression for about one year and his mother indicated that his behavior had improved. (Tr. at 43.) J.B.'s mother estimated his weight to be "a little over 400 pounds." (Tr. at 44.) Although surgery had been discussed, J.B. instead took part in a weight and exercise program. (*Id.*) J.B. was in tenth grade at the time of the hearing. (Tr. at 46.) J.B.'s mother indicated that when he is not at school, he is "at home watching TV." (Tr. at 47.) However, J.B. sometimes rides his bike to his father's or grandmother's house. (Tr. at 54-55, 57.) J.B.'s mother also stated that J.B. plays computer games, watches his younger siblings, likes to research about being a barber, and likes to cut hair. (Tr. at 57-58.) She also testified that J.B. has friends in the neighborhood that he spends time with two or three times a week. (Tr. at 60.)

J.B. testified that he is in a classroom with people who do not receive special education services and that he leaves certain classes to receive the special services, i.e., history, algebra, and English. (Tr. at 64-65.) J.B. stated that he has difficulty completing work at home when the teacher is not present because he gets easily distracted. (Tr. at 66.)

In his daily activities report, J.B.'s mother indicated that J.B. showers and goes to school every weekday and that she has "no problems" with J.B. other than him being "withdrawn" and "quiet[.]" (Tr. at 160.) She also indicated that J.B. is expected to do chores such as cleaning his bedroom and vacuuming daily and that he requires "very little" supervision in completing these

tasks, but that she "sometimes [has] to go over his work after!" (Tr. at 161.) She also indicated that J.B. is able to care for his own personal needs, prepares his own food on a daily basis, does his own laundry each week, dusts and vacuums his room on a daily basis but "rushes" the job, and mows the lawn and shovels snow, but also "rushes" this work. (Tr. at 161-63.)

On May 10, 2005, J.B.'s full scale IQ was 79, his verbal comprehension was 87, his perceptual reasoning was 86, his working memory was 77, and processing speed was 83. (Tr. at 180.)

In September and October of 2009, Plaintiff was evaluated by Aguib Diop, M.A., School Psychologist, who concluded that J.B. was "functioning within the Borderline range overall." (Tr. at 209.)

On January 25, 2010, J.B. was examined at the request of Disability Determination Services ("DDS") by Terrance Mills, Ph.D. (Tr. at 199-201.) Dr. Mills noted J.B.'s history of special education services and indicated that his problem areas "appear to be reading and math." (Tr. at 199.) It was noted that J.B. "[i]s able to independently care for his hygiene and grooming needs and occasionally helps with household chores.  His favorite activity is listening to music." (Tr. at 199-200.) Dr. Mills also noted that J.B. was oriented to person, place, and time, that his speech was clear and easily understood, that his responses were spontaneous and on target, that his psychomotor activity was normal, that there were no symptoms of ADHD and no abnormal perceptions, that his overall concentration and focus were good, and that he had an appropriate affect. (Tr. at 200.) Dr. Mills diagnosed learning disorder (NOS) and depressive disorder (NOS), and concluded that J.B.'s "ability to understand and follow simple instructions and complete basic routine tasks appears mildly impaired" and that his "ability to interact with peers and adults outside of the family appears to be mildly impaired." (Tr. at 201.)

9

Plaintiff was also examined by DDS physician C.C. Pujara, M.D., on January 25, 2010, who diagnosed morbid obesity. (Tr. at 204.)

In February 2010, J.B. was assessed at a Full Scale IQ of 78 and it was noted that J.B.'s "academic achievement is below his IQ level"; it was also noted that J.B. "struggles with both his language arts and mathematical skills." (Tr. at 412.) The assessment indicated that J.B. "can do basic math skills" but "needs to work on increasing his algebra skills" and that he "can write a basic paragraph appropriately" but should "increase his comprehension skills by comparing characters and events within a text." (Tr. at 412-13.) It was also noted that J.B. "would like to become a barber" and "would like to get a part time job over the summer to work on his job skills and to make extra money." (Tr. at 413.)

On March 7, 2010, a Childhood Disability Evaluation Form was completed by Paul Liu, D.O., and S. Sood, M.D. (Tr. at 210-16.) Drs. Liu and Sood found that J.B.'s impairments were severe but did not meet or equal a Listing. (Tr. at 210.) Drs. Liu and Sood concluded that J.B. had a marked limitation in acquiring and using information, a less than marked limitation in attending and completing tasks, no limitation in interacting and relating with others, no limitation in moving about and manipulating objects, no limitation in caring for himself, and a less than marked limitation in health and physical well-being. (Tr. at 211-13.)

J.B.'s ninth grade teacher, Cheryl Anderson, completed a questionnaire wherein she indicated that J.B. has a serious to very serious problem with all aspects of acquiring and using information, but that "[h]e functions well in the resource room and completes work at his level. He is well tempered and participates in class." (Tr. at 153.) Ms. Anderson also indicated that J.B. has "no problems" in the domain of caring for himself. (Tr. at 157.)

J.B.'s tenth grade teacher, Emily Topping, also completed a questionnaire wherein she concluded that J.B. has an obvious to very serious problem with all aspects of acquiring and using information and that J.B. has either no problem or slight problems in the domain of caring for himself, which she based on his stories regarding personal safety in which he put himself in danger, but she also noted that J.B. "[r]arely asks for help." (Tr. at 403, 407.)

### F.      Analysis and Conclusions

#### 1.      Legal Standards

After review of the record, I suggest that the ALJ utilized the proper legal standard in her application of the Commissioner's child disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

#### 2.      Substantial Evidence

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 11.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that the ALJ incorrectly held that the Plaintiff did not meet or that his impairments did not functionally equal the requirements of Listing 112.05. Plaintiff contends that J.B. has an extremely marked, rather than marked, limitation in the area of acquiring and using information, and that he has a marked limitation, rather than no limitation, in the area of caring for oneself. (Doc. 11 at 7; Doc. 14 at 4.)

11

"Functional equivalence is determined by 20 C.F.R. § 416.926a, which requires a 'marked' impairment in two 'domains' or an 'extreme' impairment in one domain." *Kelly v. Comm'r of Soc. Sec.,* 314 F. App'x 827, 829 (6th Cir. 2009) (quoting 20 C.F.R. § 416.926a(d)). An extreme limitation is defined as one that "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities" and that is "more than marked." 20 C.F.R. § 416.926a(e)(3).

Here, the ALJ concluded that J.B. had a marked limitation in acquiring and using information (Tr. at 23), a less than marked limitation in attending and completing tasks (Tr. at 25), a less than marked limitation in interacting and relating with others (Tr. at 26), no limitation in moving about and manipulating objects (Tr. at 28), no limitation in the ability to care for himself (Tr. at 29), and a less than marked limitation in health and physical well-being. (Tr. at 30.)

As indicated above, the two domains at issue are: (1) acquiring and using information and (2) caring for oneself. (Doc. 11 at 7; Doc. 14 at 4.) I suggest that substantial evidence supports the ALJ's findings. The ALJ's findings are in accord with Drs. Liu and Sood's conclusions that J.B. had a marked limitation in acquiring and using information, a less than marked limitation in attending and completing tasks, no limitation in interacting and relating with others, no limitation in moving about and manipulating objects, no limitation in caring for himself, and a less than marked limitation in health and physical well-being. (Tr. at 211-13.) In addition, they are in accord with Dr. Diop's evaluation that J.B. was "functioning within the Borderline range overall." (Tr. at 209.)

The ALJ's findings are also supported by Dr. Mills's observations that J.B. "is able to independently care for his hygiene and grooming needs and occasionally helps with household chores[,]" that he was oriented to person, place, and time, that his speech was clear and easily

12

understood, that his responses were spontaneous and on target, that his psychomotor activity was normal, that there were no symptoms of ADHD and no abnormal perceptions, that his overall concentration and focus were good, that his "ability to understand and follow simple instructions and complete basic routine tasks appears mildly impaired" and that his "ability to interact with peers and adults outside of the family appears to be mildly impaired." (Tr. at 199-201.) The ALJ's findings are also supported by the school's assessment that J.B. "can do basic math skills" but "needs to work on increasing his algebra skills" and that he "can write a basic paragraph appropriately" but should "increase his comprehension skills by comparing characters and events within a text." (Tr. at 412-13.)

I further suggest that the ALJ's findings are also largely supported by the assessments of J.B.'s teachers. Ms. Anderson found serious to very serious problems with all aspects of acquiring and using information but also stated that "[h]e functions well in the resource room and completes work at his level," "is well tempered and participates in class," and has "no problems" in the domain of caring for himself. (Tr. at 155, 157.) Ms. Topping found that J.B. has an obvious to very serious problem with all aspects of acquiring and using information, and that J.B. has either no problem or slight problems in the domain of caring for himself. (Tr. at 403, 407.)

To the extent that the teachers' opinions conflict with the opinions of the doctors, I suggest that there can be no error for the ALJ's reliance on the opinions of the doctors over the teachers. Teachers are not treating sources entitled to any deference, whereas psychologists are treating sources and therefore are entitled to deference. 20 C.F.R. §§ 404.1502; 404.1527(d)(2); 404.913(d)(2); SSR 06-03p, 2006 WL 2329939, at *1-2 (2006); *Perry ex rel. G.D. v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 427 (6th Cir. 2012) (the minor's "teachers are not acceptable medical sources").

Finally, I suggest that the ALJ's findings are supported by J.B.'s and his mother's statements that J.B. is able to take care of his own personal needs, prepare his own food on a daily basis, do his own laundry each week, dust and vacuum his room on a daily basis, mow the lawn and shovel snow (Tr. at 161-63), ride his bike to visit his father and grandmother (Tr. at 54-55, 57), play computer games, watch his younger siblings, do research about being a barber, cut hair (Tr. at 57-58), and spend time with friends in his neighborhood. (Tr. at 60.)

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.*, 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗

CHARLES E. BINDER
Dated: January 30, 2014                    United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  January 30, 2014                    By     s/Patricia T. Morris
                                                  Law Clerk to Magistrate Judge Binder

15